# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Western Division

# 05 - 30163 - MAP    Case #

ARTHUR L. CLARK and RITA M. CLARK, Individually, RAYMOND A. CLARK, RICHARD J. CLARK, JAMES F. CLARK, ARTHUR J. CLARK TRUSTEES of the E. Mt. Rd. NOMINEE TRUST, and as TRUSTEES OF THE ARTHUR L. CLARK FAMILY TRUST and as TRUSTEES OF CLARK SONS REALTY TRUST, THEODORE PEREZ, Individually and GOLDEN ACRES DEVELOPMENT CORP., Plaintiffs

v.

LYNNE BOSCHER, PHILIP McEWAN, KEVIN BOWLER, ANTHONY PETRUCELLI, RANDALL RACINE, JOHN WYSOCKI, WILLIAM ONYSKI and ANDREW DENARDO Individually and as MEMBERS OF THE WESTFIELD PLANNING BOARD DURING 2003, JOHN SULLIVAN, RONALD COLE and THOMAS FLAHERTY Individually and as WESTFIELD SEWER COMMISSIONERS DURING 2002, JANA CANTUCCIO, JOSEPH SPAGNOLI and LEE PEREZ, Individually and as WESTFIELD WATER COMMISSIONERS DURING 2002, RICHARD K. SULLIVAN, Individually and as MAYOR OF THE CITY OF WESTFIELD and  CHARLES MEDEIROS, BARBARA SWORDS, ADAM LIPTAK, JR., DAVID BANNISH, BRENT BEAN, BRIAN SULLIVAN CHRISTOPHER CREAN, JAMES CASEY, MARTIN CANTY, DANIEL KNAPIK AND CHRISTOPHER KEEFE, Individually and as MEMBERS OF THE WESTFIELD CITY COUNCIL DURING 2003, Defendants

---

## COMPLAINT
## AND DEMAND FOR JURY TRIAL

---

## PRELIMINARY STATEMENT

This is an action to recover damages sustained by the Plaintiffs named herein as a result of the actions of the named Defendants relative to the efforts of the Plaintiffs to develop their land in Westfield, Massachusetts for residential use.

FILING FEE PAID:
RECEIPT # 305994
AMOUNT $ 250.00
BY DPTY CLK 19(?)
DATE 7/8/05

Commencing in or about 1997, the named Defendants engaged in actions which repeatedly denied the Plaintiffs their right to develop their real estate to its highest and best use based upon actions which were unreasonable, arbitrary and capricious in violation of the Plaintiffs rights under the Fifth and Fourteenth Amendments of the Constitution of the United States. The actions of the named Defendants were repeatedly based upon unsupportable claims of title by the City of Westfield to lands abutting the Plaintiffs' lands, were arbitrary and capricious in relation to the Plaintiffs' application for water services, sewer services and ultimate subdivision approval.

The pattern of conduct engaged in by the named Defendants over the period of time in question resulted in the arbitrary and capricious granting of approvals and municipal services to parties other than the Plaintiffs in a discriminatory manner which was violative of the Plaintiffs' Constitutional rights.

In general, this Complaint is being filed because the Defendants have continuously interfered with and prevented the Plaintiffs development of their residentially zoned land. The continual engagement of the Defendants in making arbitrary and capricious decisions have caused the Plaintiffs substantial actual financial damage. The Defendants, Westfield Planning Board, Westfield Sewer Commission and the Westfield Water Commission adopted the actions of the individual Defendants thus making them their own. Essentially, the Defendants have unlawfully used their official positions to cause the Plaintiff to suffer significant damage.

## PARTIES

1. Arthur L. Clark and Rita M. Clark, husband and wife, are individuals with a usual place of residence at 1804 East Mountain Road, Westfield, Massachusetts.

2. Raymond A. Clark, Richard J. Clark, James F. Clark and Arthur J. Clark are the Trustees of the East Mt. Rd. Nominee Trust under a Declaration of Trust recorded with the Hampden County Registry of Deeds in Book 13129, Page 21 with a usual mailing address of 93 Fairway Drive, Chicopee, Massachusetts .

3. Raymond A. Clark, Richard J. Clark, James F. Clark and Arthur J. Clark are the Trustees of the Arthur L. Clark Family Trust under a Declaration of Trust recorded with the Hampden County Registry of Deeds in Book 6723, Page 513 with a usual mailing address of 32 Sandpiper Road, Tampa, Florida.

4. Raymond A. Clark, Richard J. Clark, James F. Clark and Arthur J. Clark are the Trustees of the Clark Sons Realty Trust under a Declaration of Trust recorded with the Hampden County Registry of Deeds in Book 6723, Page 524 with a usual mailing address of 32 Sandpiper Road, Tampa, Florida.

5. Theodore Perez is an individual with a usual place of residence at 34 Zephyr Drive, Westfield, Massachusetts.

6. Golden Acres Development Corp. is a Massachusetts corporation having a usual mailing address of 32 Sandpiper Road, Tampa, Florida.

7. Lynne Boscher is an individual with a usual address of 30 Mill Street, Westfield, Massachusetts, and served on the Westfield Planning Board during the year 2003.

8. Philip McEwan is an individual with a usual address of 153 Western Avenue, Westfield, Massachusetts, and served on the Westfield Planning Board during the year 2003.

9. Kevin Bowler is an individual with a usual address of 101 Big Wood Drive, Westfield, Massachusetts, and served on the Westfield Planning Board during the year 2003.

10. Anthony Petrucelli is an individual with a usual address of 17 Pumpkin Lane, Westfield, Massachusetts, and served on the Westfield Planning Board during the year 2003.

11. Randall Racine is an individual with a usual address of 52 East Glenn Drive, Westfield, Massachusetts, and served on the Westfield Planning Board during the year 2003.

12. John Wysocki is an individual with a usual address of 70 West Silver Street, Westfield, Massachusetts, and served on the Westfield Planning Board during the year 2003.

13. William Onski is an individual with a usual address of 37 Hillcrest Circle, Westfield, Massachusetts, and served on the Westfield Planning Board during the year 2003.

14. Andrew Denardo is an individual with a usual address of 45 Old Quarry Road, Westfield, Massachusetts, and served on the Westfield Planning Board during the year 2003.

15. John Sullivan is an individual with a usual address of 18 Crestwood Circle, Westfield, Massachusetts, and served on the Westfield Sewer Commission during the year 2002.

16. Ronald Cole is an individual with a usual address of 71 Zephyr Drive, Westfield, Massachusetts, and served on the Westfield Sewer Commission during the year 2002.

17. Thomas Flaherty is an individual with a usual address of 79 Wildflower Circle, Westfield, Massachusetts, and served on the Westfield Sewer Commission during the year 2002.

18. Jana Catuccio is an individual with, on information and belief, a usual address of 7 Hawthorne Avenue, Westfield, Massachusetts, and served on the Westfield Water Commission during the year 2002.

19. Joseph Spagnoli is an individual with a usual address of 52 Mockingbird Lane, Westfield, Massachusetts, and served on the Westfield Water Commission during the year 2002.

20. Lee Perez is an individual with a usual address of 12 Malone Avenue, Westfield, Massachusetts, and served on the Westfield Water Commission during the year 2002.

21. Richard K. Sullivan is an individual with a usual address of 29 Wildflower Circle, Westfield, Massachusetts who served as Mayor of the City of Westfield during the years 1997 through the present date.

22. Charles Medeiros is an individual with a usual address of 8 Woodside Terrace, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

23. Barbara Swords is an individual with a usual address of 183 Highland Avenue, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

24. David Bannish is an individual with a usual address of 147 Granville Road, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

25. Brent Bean is an individual with a usual address of 94 Ridgecrest Drive, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

26. Brian Sullivan is an individual with a usual address of 33 Woodsong Road, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

27. Christopher Crean is an individual with a usual address of 65 Rachael Terrace, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

28. James Casey is an individual with a usual address of 50 Daniel Ridge, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

29. Martin Canty is an individual with a usual address of 30 Shaker Road, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

30. Daniel Knapik is an individual with a usual address of 43 East Silver Street, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

31. Christopher Keefe is an individual with a usual address of 149 Yeoman Avenue, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

32. Adam Liptak, Jr. is an individual with a usual address of 6 Wintergreen Lane, Westfield, Massachusetts, and served on the Westfield City Council during the year 2003.

## JURISDICTION AND VENUE

33. This Court has jurisdiction over the action pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983. The amount in controversy between the Plaintiffs and the Defendants exceeds, exclusive of interest and costs, the sum of $75,000.00.

34. Venue is appropriate within the District of Massachusetts pursuant to 28 U.S.C. §1391(a).

## FACTUAL BACKGROUND

35. Arthur L. Clark and Rita M. Clark began acquiring multiple parcels of land prior to 1997.

36. At some point in 1997, Arthur L. Clark sought the assistance of an engineering firm, D.L. Bean, Inc. (hereinafter referred to as "Bean"), in Westfield to seek subdivision of his land off East Mountain Road in Westfield for residential purposes.

37. Concurrently, Arthur L. Clark and Rita M. Clark transferred portions of their real estate holdings to the Plaintiff Trustees of the Arthur L. Clark Family Trust, the Clark Sons Realty Trust and the E. Mt. Rd. Nominee Trust.

38. At Arthur L. Clark's and the Trustees request, Bean prepared subdivision plans for the properties in question for submission to the Westfield Planning Board.

39. After hearing, the plans submitted were rejected on the basis that they included land owned by the City of Westfield, allegedly a variable strip 50 feet, more or less, in width around a pond on the premises (Chapin Pond) and the feeder brook for the pond.

40. At no time during the hearing was evidence produced of the ownership of the strip and a mere reference to the Assessor's Plans for the City were used as the basis for the underlying reason for the rejection of the subdivision plans.

41. The City's principal planner, Mark Noonan, advised the Planning Board that the proposed subdivision could not be approved because the City of Westfield owned a portion of the land proposed for the subdivision.

42. At the Planning Board meeting on which the Clark Plan was on the agenda, Mark Noonan literally threw the Plaintiffs' plans on the table and said it could not be approved because of the title question.

43. Despite repeated requests for title references to support the alleged ownership by the City of Westfield, the Planning Board's representative, mark Noonan refused.

44. The Plaintiffs' proposed subdivision contemplated a connection to the City of Westfield sewer system through Elise Street, so-called.

45. At no time did the Planning Board or the Sewer Commission suggest any lack of capacity by the City of Westfield sewer system to accommodate this proposal.

46. The Plaintiffs submitted no fewer than four separate revisions of their proposed subdivision plans between 1997 and 2001, all of which were rejected on various arbitrary and capricious bases including, but not limited to, unsupported claims of title, inadequate access (despite compliance with planning board regulations), danger to the local aquifer (despite the pre-existence of identified sources of contamination located on the land of Barnes Municipal Airport located adjacent to the Plaintiffs' land.

47. At a point in 2001, the Plaintiffs Raymond Clark, Arthur Clark, James Clark and Richard Clark, as Trustees of the three Plaintiff trusts (hereinafter referred to as "Clark") and the Plaintiff Theodore Perez (hereafter referred to as "Perez"), entered into an agreement to combine their contiguous land for the purpose of

creating a subdivision with access from both Elise Street and East Mountain Road, and utilizing municipal sewer and water.

48. in 2001, Clark and Perez agreed that Clark should form the Plaintiff corporation Golden Acres Development Corp. (hereinafter referred to as "Golden") to proceed with the new proposed subdivision.

49. At all times relevant hereto, the Rules and Regulations of the Westfield Planning Board require that subdivision proposals which have access to local municipal sewer and water services be connected to the same.

50. The Plaintiffs, through their engineering representative, D.L. Bean, Inc., ascertained that municipal sewer and water lines were located in the approximate vicinity of the Plaintiffs' proposed new subdivision.

51. Under applicable rules and practice in the City of Westfield, the Planning Board has no jurisdiction over municipal water and sewer lines and services, despite requiring connection to the same if available.

52. The jurisdiction over water services in the City of Westfield lies within the Westfield Water Commission and its Commissioners.

53. The jurisdiction over sewer services in the City of Westfield lies within the Westfield Sewer Commission and its Commissioners.

54. The Plaintiffs Golden and Perez submitted a Preliminary Plan for Fairway Club Estates in December of 2001 to the Westfield Planning Board.

55. Concurrently, the Plaintiffs Clark Sons Realty Trust and E. Mt. Rd. Nominee Trust, submitted a Preliminary Plan for Emerald Acres Estates in December of 2001 to the Westfield Planning Board.

56. In February of 2002, the Westfield Planning Board rejected both the Fairway Club Estates and Emerald Acres Estates preliminary plans, without specific reasons therefore.

57. Plaintiffs' representative, Bean, attempted to ascertain what adjustments the Planning Board would require to obtain approval by meeting with members of the Planning Board.

58. Bean prepared revisions of both subdivision plans and resubmitted them in March of 2002.

59. Concurrently with the resubmission, the Plaintiffs, through Counsel, sent a letter to the Westfield City Council requesting that the proposed revisions to the City's Master Plan include the Plaintiffs' request to be included in the proposed increase in sewer and water capacity for their subdivision.

60. On March 13, 2002, the Westfield City Council unanimously voted to reject the Plaintiff's proposal, despite the fact that the Council debate included discussions of the importance of keeping "in ground" septic system at a minimum in the areas of the City's aquifers and the need to increase delivery of municipal water services.

61. In April of 2002, the Planning Board rejected the plan for Emerald Acres Estates for various reasons not included in the rules and regulations including the fact that the City owned title to land over which the Plaintiffs were proposing access, a statement unsupported by any factual evidence.

62. In June of 2002, Bean met with the Water Commissioners, Jana Catuccio, Lee Perez, and Joseph Spagnoli and also with Superintendent, Charles Darling to seek municipal water for the Plaintiffs' subdivision plans.

63. At the meeting described in paragraph 62 above, Bean was advised by the Water Commissioners that there was no desire or inclination to grant municipal water use to the Plaintiffs because ". . . the City did not want the project there, and didn't even want 100 homes in the area."

64. Following the meeting described in paragraph 62 above, Charles Darling advised Bean that a hydraulic study could determine if the volume of water required by the Plaintiffs' plan would be feasible.

65. In June of 2002, Water Commissioner, Lee Perez, stated to a reporter for the Westfield Evening News that in denying water to another development (a project proposed by a Charles Dufault) he believed that water could be offered to the number of homes in question, but he that it should not be made available to developers who are forced to use septic systems for their developments due to lack of municipal sewer availability.

66. In July of 2002, the Water Department disclosed that a hydraulic study conducted by Prism Environmental, Inc. had determined that the "loop" resulting from the Plaintiffs' subdivision would enhance the City's system by creating increased pressure and flowage for the entire area, not merely the Plaintiffs' property.

67. On or about July 10, 2002, the Water Commissioners voted to deny the Plaintiffs the use of municipal water without stating the factual or legal basis for their decision.

68. On information and belief, the Plaintiffs have ascertained from their representative, Bean, that the Water Commission's decision was based upon the failure of the Plaintiffs to obtain permission for connection to municipal sewer services.

69. Essentially, the Water Commissioners required the Plaintiffs to obtain municipal sewer services before they would grant municipal water usage to the Plaintiffs' subdivision, a reason, which has no regulatory or legal basis and is arbitrary and capricious.

70. During the concurrent time frame in early 2002, the Plaintiffs, through their representative, Bean, also sought permission from the Sewer Commissioners for connection to the municipal sewer lines.

71. Bean advised the Sewer Commissioners that the Planning Board rules and regulations required developers to obtain municipal sewer and water where the same were available in proximity to the site being developed.

72. The Sewer Commissioners, named herein as Defendants, advised Bean that there would be no approval of the Plaintiffs' request for municipal sewer services connections until the Plaintiffs obtained permission for connection to the municipal water services.

73. The aforesaid Sewer Commissioners further stated that there was a concern with the capacity of the system to add the number of lots the Plaintiffs were proposing.

74. In the same time period, the Town of Southampton advised the City of Westfield that it was withdrawing from the agreement to use the City of Westfield sewer

system, thereby freeing approximately 30% of the City's sewer system for use within Westfield.

75. At some point in later 2002, the Sewer Commissioners denied the Plaintiffs' request for connection to the municipal sewer lines.

76. Subsequent to the Sewer Commissioners' denial of the Plaintiffs' request, Bean advised the Sewer Commissioners that there was now an excess capacity to service the Plaintiffs' subdivision, and that in addition to the hydraulics of the system, both municipal sewer and water systems would be enhanced by the Plaintiffs' subdivision.

77. On information and belief, the Sewer Commissioners advised Bean that the excess capacity was being allocated to other subdivisions or developers who had asked for it in the past, thus refusing to reconsider the Plaintiffs' request and relying upon a basis for denial that was unreasonable, arbitrary and capricious.

78. Despite the denials, the Plaintiffs requested that Bean prepare a new subdivision plan with fewer lots than originally proposed, but with on-site water and waste disposal systems.

79. Bean prepared the revised subdivision plan and submitted the same to the Planning Board in October of 2002, which plan was in full compliance with all Planning Board rules and regulations.

80. Following the submission of the plan by Bean to the Planning Board, the Planning Board, in accordance with its rules and regulations, solicited comments from all interested municipal Boards and Commissions.

81. The Water Commissioners, through their Superintendent, Charles Darling, advised the Planning Board that the development posed a threat to the quality of the municipal drinking water and that all steps should be taken to protect the water supply.

82. The Water Commissioners Superintendent, Charles Darling also cited concern over the crossing of the Chapin Pond dam as an access for the Plaintiffs' subdivision to East Mountain Road, despite the fact that the issue of the dam's safety and integrity was a municipal obligation (the City of Westfield had been advised in 1998 that the dam needed improvement to prevent catastrophic failure).

83. The Westfield Health Director, Daniel Reardon, advised the Planning Board that due to the sensitivity of the underlying aquifer, that the City should consider the allowance of municipal sewer and water to avoid a large number of wells and septic systems.

84. In December of 2002, the Planning Board conducted a public hearing on the Plaintiffs' proposed subdivision.

85. On January 7, 2003, the Planning Board met and voted to deny the Plaintiffs' subdivision plan approval for a list of reasons, none of which are supported by Planning Board rules and regulations, or other applicable statutes or regulations.

86. In denying the Plaintiffs' request for subdivision approval, the Planning Board made reference to a long standing policy of allocating municipal sewer and water services to "other" developments or developers without clear or concise definition of what criteria were to be applied to the allocation and approval process engaged in by the Planning Board.

87. The actions of the Planning Board further relied upon the fact that because of the refusal of the Water Commissioners to allocate municipal water to the project, the Plaintiffs were forced to propose on-site wells, thereby giving the Planning Board the basis to claim that they were protecting the aquifer underlying the project, despite the suggestions that municipal water services would accomplish the same result, making the decision unreasonable, arbitrary and capricious.

88. In theur denial, the Planning Board refused to grant waivers of certain minor regulations, which had been granted to many developers as a matter of practice prior to the Plaintiffs' development proposal, further demonstrating the arbitrariness of their actions.

89. Subsequent to the Planning Board's actions, the Plaintiffs requested that Bean re-file for the municipal sewer system extension permit with the Department of Public Works and Sewer Commissioners.

90. Bean re-filed the application in April of 2003 and no action has been taken to date.

91. In April of 2004, the Planning Board approved the tie in of a private subdivision for 63 new homes in the Munger Hill neighborhood with permission to run across an unrelated privately owned parcel.

92. Further in April of 2004 the Planning Board approved a water line for a proposed industrial park off Servistar Way which would exceed the 300 foot limit in the applicable rules and regulations.

93. In May of 2005, the City of Westfield approved a 250 unit affordable housing development on Russelville Road which, on information and belief, will be serviced by municipal sewer and water.

94. At some point in 2003, Clark became aware that the Mayor of the City of Westfield, (the defendant Richard Sullivan) had been making informal inquiries with the Plaintiff. Theodore Perez, to prepare for a taking of the Perez land.

95. In May of 2003, the Westfield Water Commissioners voted to request that the Mayor submit a proposal to the Westfield City Council to acquire the Perez parcel for "water supply protection".

96. At all times relevant hereto, the Mayor and the Water Commissioners knew (on the basis of working test wells drilled through the actions of Winding River Conservancy Trust) that the major portion of the water supply sought to be protected was located on the Clark land and that no study was made of the Perez land being proposed for taking.

97. At a regular meeting of the Westfield City Council on August 15, 2003, a motion was made to suspend the rules so that an item not previously on the agenda could be acted upon by the Council.

98. A motion was then made by Councilor Charles Medeiros, to take 38 acres from Theodore and Maria Perez by eminent domain for "open space" and that the matter be referred to the Mayor.

99. On or about August 26, 2003, Mayor Richard Sullivan approved the proposed taking of the Perez land, thereby adopting the informal negotiations and actions of the Mayor prior to that date as their own.

100.    The eminent domain taking was approved at the requisite first and second readings and on October 7, 2003, the Notice of Taking and Award of *Pro Tanto* Payment was sent to Perez.

101.    At all times relevant hereto, the Mayor and members of the Planning Board, Sewer Commission and Water Commission made public comments regarding their sentiments against the Plaintiffs' development.

102.    The taking of the Perez land and not the Clark land renders the Plaintiffs' subdivision plans non-feasible, as the access to East Mountain Road was planned across the Perez land.

103.    At all times relevant hereto, the Mayor, the Planning Board, Sewer Commissioners and Water Commissioners knew that without the Perez land, the Plaintiffs' subdivision would fail to be feasible.

On information and belief, the Plaintiffs state that the Mayor, Water Commissioners, Sewer Commissioners and Planning Board were aware that the subdivision plan submitted in 2002 by Bean with proposed on site water and sewer complied with all applicable rules and regulations for approval and that the reasons cited for denying the Plaintiffs' plan were based upon criteria and denial of requested waivers which were not applied to other developers in the City of Westfield in the past or since the Plaintiffs' plan was denied.

**Count I**
**Fifth and Fourteenth Amendments**
**M.G.L. c. 93,§ 102**

104.    Plaintiffs reallege and reassert all of the allegations contained in
paragraphs 1 through 104 of this Complaint and incorporate the same herein by
reference.

105.    The Defendants, by their actions as detailed above did unlawfully infringe
upon the Plaintiffs' equal rights to make and enforce contracts and to other wise
enjoy the full and equal benefit and protection of the laws in violation of the Fifth
and Fourteenth Amendments of the Constitution of the United States of America
and of M.G.L. c. 93,§102.

106.    As a direct and proximate result of the above defendants' conduct the
Plaintiffs suffered damages.


WHEREFORE, the Plaintiffs demand judgment against the defendants for
compensatory and exemplary damages, plus interest, costs and attorneys fees.


**Count II**
**42 U.S.C. §1983**
**Individual Defendants**

107.    Plaintiffs reallege and reassert all of the allegations contained in
paragraphs 1 through 106 of this Complaint and incorporate the same herein by
reference.

108.     The named defendants, in their individual capacities, by their actions as detailed above, while acting under color of state law, did cause the Plaintiffs to be subjected to the deprivation of their rights as secured by the Constitution and laws of the United States in violation of 42 U.S.C. §1983.

109.     As a direct result of the defendants' conduct, the Plaintiffs suffered damages.

WHEREFORE, the Plaintiffs demand judgment against the defendants for compensatory and exemplary damages, plus interest, costs and attorneys fees.

## Count III
## Civil Conspiracy

110.     Plaintiffs reallege and reassert all of the allegations contained in paragraphs 1 through 109 of this Complaint and incorporate the same herein by reference.

111.     The defendants knew that the Plaintiffs' subdivision proposal met all applicable rules and regulations in the City of Westfield.

112.     The defendants were open and vocal in their opposition to the Plaintiffs' proposed subdivision.

113.     The actions of the Mayor, Water Commissioners, Sewer Commissioners and Planning Board, in concert sought to deprive the Plaintiffs' of their contractual and lawful rights by manipulation of the eminent domain process to

take a portion of the Plaintiffs' proposed subdivision knowing it would stop the development.

114.    The aforesaid defendants, having the authority of state law, used this particular power for and as coercion to deprive the Plaintiffs of their lawful rights.

115.    As a direct result of the defendants actions, the Plaintiffs suffered damages.

WHEREFORE, the Plaintiffs demand judgment against the defendants for compensatory and exemplary damages, plus interest, costs and attorneys fees.

The Plaintiffs,
by their Attorney,


William J. Pudlo
P.O. Box 676
West Springfield, Mass. 01090
Telephone: (413) 739-4000
FAX: (413) 739-3620
BBO #407640

take a portion of the Plaintiffs' proposed subdivision knowing it would stop the development.

114.    The aforesaid defendants, having the authority of state law, used this particular power for and as coercion to deprive the Plaintiffs of their lawful rights.

115.    As a direct result of the defendants' actions, the Plaintiffs suffered damages.

WHEREFORE, the Plaintiffs demand judgment against the defendants for compensatory and exemplary damages, plus interest, costs and attorneys fees.


## PLAINTIFFS DEMAND JURY TRIAL ON ALL COUNTS HEREIN


The Plaintiffs,
by their Attorney,


William J. Pudlo
P.O. Box 676
West Springfield, Mass. 01090
Telephone: (413) 739-4000
FAX: (413) 739-3620
BBO #407640

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Arthur L. Clark, et al

**(b)** County of Residence of First Listed Plaintiff **Hampden**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
William J. Pudlo, P.O. Box 676
West Springfield, Ma. 01090   (413) 739-4000

## DEFENDANTS
Lynne Boscher, et al.

County of Residence of First Listed Defendant **Hampden**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

# 05 - 30163 - MAP

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☒ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☒ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
5th and 14th Amendments of U.S. Constitution;; 42 U.S.C. sec. 1983
Brief description of cause:
Actions by municipal officials acting to deprive Plaintiffs of property rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 8,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE
7/8/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)_____Arthur L. Clark et al. v. Lynne Boscher et al.

_____

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

**05 - 30163 - MAP**

- [ ] I.  160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
- [XX] II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
       740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   for patent, trademark or copyright cases
- [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
       315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
       380, 385, 450, 891.
- [ ] IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
       690, 810, 861-865, 870, 871, 875, 900.
- [ ] V.  150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES [ ]   NO [XX]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

    YES [ ]   NO [XX]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES [ ]   NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES [ ]   NO [XX]

7.  Do **all** of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES [XX]   NO [ ]

    A.  If yes, in which division do _all_ of the non-governmental parties reside?

        Eastern Division [ ]     Central Division [ ]     Western Division [XX]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]     Central Division [ ]     Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   William J. Pudlo
ADDRESS   P.O. Box 676 West Springfield, Mass. 01090
TELEPHONE NO. (413) 739-4000   FAX: (413) 739-3620

(CategoryForm.wpd - 5/2/05)