UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

ARTHUR L. CLARK, et al.,
    Plaintiffs

V.                           CIVIL ACTION NO. 05-30163-MAP

LYNNE BOSCHER, et al.,
    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

I.  Nature and Status of Proceedings

The Plaintiffs seek to recover compensatory and exemplary damages allegedly sustained as a result of the decision of the Defendants (collectively, "City of Westfield" or "the City"), to deny the Plaintiffs' application for approval of a subdivision development plan.

The Plaintiffs' Complaint contains three Counts. In Count I, the Plaintiffs seek to recover for alleged equal protection violations as a result of the City's denial of their subdivision application. Count II seeks relief under 42 U.S.C. §1983 for the violations alleged in Count I. Count III seeks recovery for civil conspiracy.

The City of Westfield moves to dismiss the Plaintiffs' Complaint because the Plaintiffs have improperly sought recourse in the Federal Court system for a land use dispute. This Court should also refrain from hearing the case, pursuant to the doctrine of Younger abstention, because the Plaintiffs have initiated ongoing state court litigation involving these same issues.

II.  Statement of Facts[1]

A.  Facts Regarding the City's Rejection of Plaintiffs' Subdivision Plans

In 1997, Arthur Clark ("Mr. Clark") and his wife began the process of seeking to develop a subdivision of their land in Westfield. (Complaint at ¶¶35, 36). In furtherance of these plans, Mr. Clark transferred his real estate to the Plaintiff Trustees of the Arthur L. Clark Family Trust, the Clark Sons Realty Trust and the E. Mt. Rd. Nominee Trust. (Complaint at ¶37).

With the assistance of an engineering firm, Mr. Clark prepared and submitted subdivision plans to the Westfield Planning Board. (Complaint at ¶38). After hearing, the Planning Board rejected the proposal because, *inter alia*, the subdivision plans included a strip of land owned by the City. (Complaint at ¶39). The proposed subdivision also contemplated a connection to the City of Westfield sewer system. (Complaint at ¶44). The Plaintiffs submitted four revisions of their proposal. (Complaint at ¶46). All of the revisions were rejected by the Planning Board, based on the City's claim of title to a portion of the land, inadequate access to the proposed subdivision, and concerns about effects on the local aquifer. (Complaint at ¶46).

In 2001, Mr. Clark, along with Raymond Clark, James Clark and Richard Clark, as trustees of the three Plaintiff trusts (collectively referred to as "the Clarks"), and Plaintiff Theodore Perez ("Mr. Perez"), agreed to combine their contiguous lands for the purpose of creating a subdivision. (Complaint at ¶47). Clark created the Plaintiff corporation, Golden Acres Development Corp. ("Golden Acres") to proceed with the subdivision plan. (Complaint at ¶48). The subdivision plan proposed access from two streets and the utilization of municipal sewer and water. (Complaint at ¶47).

---

[1] For the purposes of this Motion to Dismiss, the allegations of the Plaintiffs' Complaint are accepted as true.

Messrs. Clark and Perez submitted their Preliminary Plan for the Fairway Club Estates to the Westfield Planning Board in December 2001. (Complaint at ¶54). Concurrently, the Plaintiffs Clark Sons Realty Trust and E. MT. Rd. Nominee Trust submitted a Preliminary Plan for the Emerald Acres Estates. (Complaint at ¶55). In February 2002, the Westfield Planning Board rejected both plans. (Complaint at ¶56). Plaintiffs' engineer prepared revisions of both plans and resubmitted them in March of 2002. (Complaint at ¶58).

Concurrently, the Plaintiffs sent a letter to the Westfield City Council requesting that the City's Master Plan include the Plaintiff's request for increased sewer and water capacity for their subdivision. (Complaint at ¶59). In March 2002, the Westfield City Council unanimously voted to reject the Plaintiffs' proposal. (Complaint at ¶60).

In April 2002, the Planning Board rejected the revised plan for Emerald Acres Estates because, *inter alia*, the plan included land owned by the City of Westfield. (Complaint at ¶61). Subsequently, in June of 2002, Mr. Clark's engineer met with the various town officials to seek connection to municipal water for the projects. (Complaint at ¶62). Mr. Clark's engineer was advised that the City did not intend to grant municipal water use to the Plaintiffs because "the City did not want the project there…." (Complaint at ¶63). In July of 2002, the Water Commissioners voted to deny the extension of municipal water to the subdivision. (Complaint at ¶67).

In early 2002, the Plaintiffs sought permission to connect to the municipal sewer lines. (Complaint at ¶70). The Plaintiffs were advised their request would not be approved until they had obtained permission to connect to municipal water. (Complaint at ¶72). Plaintiffs were also advised that the City had concerns regarding the capacity of the municipal sewer system to add

the number of lots the Plaintiffs were proposing. (Complaint at ¶73). The Plaintiffs' request for connection to the municipal sewer lines was later denied. (Complaint at ¶75).

Despite the denials, the Plaintiffs had new subdivision plans drawn up with fewer lots, and with on-site water and waste disposal systems. (Complaint at ¶78). The plans were submitted to the Planning Board in October 2002. (Complaint at ¶79). The Planning Board, which accepted comments from interested municipal Boards and Commissioners, was advised by the Water Commissioners and the Westfield Health Director that the subdivision plans posed a threat to the quality of the town's drinking water due to the sensitivity of the underlying aquifer. (Complaint at ¶¶80, 81, 83). The Planning Board was also advised of concerns regarding the proposed access to the development. (Complaint at ¶82).

In December 2002, the Planning Board held a public hearing regarding the Plaintiffs' proposed subdivision. (Complaint at ¶84). In January 2003, the Planning Board voted to deny Plaintiffs' subdivision plan. (Complaint at ¶85). In its denial, the Planning Board relied upon the fact that the plan required on-site wells which might damage the aquifer. (Complaint at ¶87).

In the summer of 2003, the town took 38 acres of land by eminent domain from plaintiff Theodore Perez, for "water supply protection." (Complaint at ¶¶95-100). The taking of the Perez land renders the Plaintiffs' subdivision plans non-feasible. (Complaint at ¶¶102).

In Counts I and II the Plaintiffs allege that the City violated the Plaintiffs' equal protection rights as a result of the City's decision to deny the Plaintiffs' subdivision plan. In Count III the Plaintiffs allege a civil conspiracy to deny the Plaintiffs' subdivision plan by manipulation of the City's eminent domain powers.

B.  Facts Regarding Ongoing State Litigation

The Plaintiffs have filed three separate state cases involving the denial of their subdivision plans.  The Superior Court case, in which Plaintiffs alleged, *inter alia*, violations of the Massachusetts and United State Constitutions, has been dismissed.  That decision was never appealed.  There are also two lawsuits currently pending in the Land Court that involve the dispute presently before this Court.  All of these lawsuits were filed before the Plaintiffs commenced the present federal action.

1.  The Clark Land Court Case

In Clark v. City of Westfield, Land Court Misc. Case No. 247737, (the "Clark Land Court Case"), the Clarks filed a Petition to Compel Supposed Claimant to Try Title.  The outcome of such a case is to force the City to bring suit against the plaintiff to try title to a disputed piece of real property.[2]  The Land Court granted the Petition, and ordered the City of Westfield to file a Complaint to try the title to disputed land.  The City of Westfield filed the required Complaint on February 26, 1999.  Land Court Misc. Case No. 247737.  A true and accurate copy of selected pleadings filed in this case are attached to the Affidavit of Kenneth C. Pickering as **Exhibit A**.

The Clark Land Court Case involves the same property at issue in the instant federal action.  As is alleged in the instant Complaint, the City of Westfield's claim to title of this land was among the reasons that it rejected the Plaintiffs' subdivision plan. (Complaint at ¶39).  The Clark Land Court Case is currently pending.

---

[2] The practical purpose is to cause the City to bring suit shifting the burden of persuasion.

2.  The Golden Acres Superior Court Case

In Golden Acres Development v. Board of Water Commissioners, Sup. Ct. No. 02-932, (the "Golden Acres Superior Court Case"), the Plaintiffs requested that the Superior Court set aside the City's denial of their subdivision plan, alleging that the Defendants had violated the Plaintiffs' equal protection rights under the Massachusetts and United States Constitutions. A true and accurate copy of selected pleadings filed in this case are attached to the Affidavit of Kenneth C. Pickering as **Exhibit B**. The Plaintiffs alleged that there were "certain errors of law in the defendant's decision and/or the decision otherwise violated Massachusetts law," and that the defendant had "denied plaintiffs equal protection under the laws and Constitution of the United States and Commonwealth of Massachusetts." (Golden Acres Superior Court Complaint attached as **Exhibit B(i)** at ¶¶9, 10).

The Superior Court granted the defendant's motion to dismiss on jurisdictional grounds. (Golden Acres Memorandum and Order attached as **Exhibit B(v)**). The court noted, however, that even had it reached the merits of the case, it would have dismissed the Complaint for failure to state a claim on which relief can be granted. The Superior Court stated that "the allegations of paragraphs nine and ten, (that the Board's decision 'otherwise violated Massachusetts law' and denied the plaintiffs 'equal protection under the laws and Constitution of the United States and Commonwealth of Massachusetts'), given the lack of any factual support for those allegations," did not suffice to meet even the liberal notice pleading standard. (Golden Acres Memorandum and Order attached as **Exhibit B(v)**, n.2).[3]

The Superior Court case was dismissed in November 2002. The Plaintiffs did not appeal the decision, and have not sought to amend their Complaint.

---

[3] The same can be said for the instant federal action.

3.  The Golden Acres Land Court Case

In <u>Golden Acres Development Corp. v. City of Westfield</u>, Land Court Misc. Case No. 287055, (the "Golden Acres Land Court Case"), the Plaintiffs requested that the Land Court annul the City of Westfield's decision to deny the Plaintiffs' application for subdivision. A true and accurate copy of selected pleadings filed in this case are attached to the Affidavit of Kenneth C. Pickering as **Exhibit C**.

In Count I of the Golden Acres Land Court complaint, the Plaintiffs claim that the "Planning Board of the City of Westfield has waived its rules and regulations under circumstances similar to plaintiffs but refused to waive such for plaintiffs' subdivision." (Golden Acres Land Court Complaint attached as **Exhibit C(i)** at ¶11). The Plaintiffs also allege in Count I that "the Planning Board of the City of Westfield is requiring plaintiffs' subdivision … to conform to an unreasonable application of its rules and regulations." (Golden Acres Land Court Complaint attached as **Exhibit C(i)** at ¶12).

In Count II, the Plaintiffs complain that the City's decision to deny water to the Plaintiffs' proposed development "exceeds the authority of the board, and/or is based on a legally untenable grounds and/or is unreasonable, whimsical, capricious, arbitrary or not grounded in fact," and that the City "abused its discretion by denying the plaintiffs water for the proposed subdivision." (Golden Acres Land Court Complaint attached as **Exhibit C(i)** at ¶21). The Land Court dismissed Count II of the Complaint because the claim did not involve "right, title, or interest in land" and did not involve "subdivision ordinances, by-laws or regulations" as required by M.G.L. c. 249, § 4.

Count I of the Golden Acres Land Court complaint, which involves the merits of the City's decision on the subdivision plan (the very issue now pending before this Court), is currently pending in the Land Court.

### III.  Argument

#### A. Plaintiffs' Claims Are Not Properly Before this Court Because Ordinary Land Use Disputes Do Not Give Rise to Federal Claims.

All of the Plaintiffs' claims and allegations arise from a dispute regarding the decision of the City's planning board to deny an application for the development of a subdivision.  This is not a matter for federal court intervention, especially "where, as here, the state offers a panoply of administrative and judicial remedies…." Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir. 1985).

In Raskiewicz, the First Circuit Court of Appeals affirmed the district court's grant of summary judgment in favor of the town, noting that "[f]ederal courts do not sit as a super zoning board or a zoning board of appeals."  Raskiewicz, 754 F.2d at 44.[4]  The plaintiff in the Raskiewicz case argued that "because of the presence of bias, the … case is not governed by the general rule prohibiting ordinary land use disputes from being litigated under § 1983."  The First Circuit disagreed, stating that "[i]f all that were required to secure federal jurisdiction were loose

---

[4] Other Circuit Courts of Appeal have echoed the First Circuit's holding that land disputes are not appropriate for federal court review.  The Eleventh Circuit has stated that, "federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions."  Spence v. Zimmerman, 873 F.2d 256, 262 (11th Cir. 1989).  See also Sylvia Development Corp. v. Calvert County, 48 F.3d 810, 828-829 (4th Cir. 1995) ("Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of federal courts….  Accordingly, federal courts should be extremely reluctant to upset the delicate political balance at play in local land use disputes."); Taylor Investment, Ltd. v. Upper Darby Township, 983 F.2d 1285, 1291 (3d Cir. 1993) ("land use disputes are uniquely matters of local concern more aptly suited for local resolution."); Littlefield v. City of Afton, 785 F.2d 596, 607 (8th Cir. 1986) ("We are concerned that federal courts not sit as zoning boards of appeals.").

claims of conspiracy and corruption, virtually any case of this type could be brought into the federal court." Id. at 44.

Similarly, in Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1982), the First Circuit addressed a developer's § 1983 claim based on a town planning board's rejection of his subdivision plan. The court ruled in favor of the town, noting that to hold otherwise would mean "[v]irtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court…. Neither Congress nor the courts have, to date, indicated that section 1983 should have such a reach." Id. at 831. The First Circuit noted that "[e]very appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983." Id.

Like Raskiewicz and Creative Environments, the Complaint in the instant case details a "run of the mill dispute between a developer and a town planning agency…." Id. at 833. The Plaintiffs do not allege any procedural irregularities, that similarly situated parties have been treated differently, or any racial animus. In fact, defendant Lee Perez is the brother of plaintiff Theodore Perez. The Plaintiffs' allegations amount to a claim that the City of Westfield should have approved their subdivision plans, and did not do so. Such a "conventional planning dispute – at least when not tainted with fundamental procedural irregularity, racial animus, or the like (which plaintiffs do not allege) – which takes place within the framework of an admittedly valid

state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution." Id.

Here, the Plaintiffs' claims are typical of a developer whose plans have been rejected by a town planning board: the City of Westfield rejected the Plaintiffs' subdivision plans, giving as reasons, *inter alia*, a claim of ownership of portion of the property by the City and concerns regarding effects on the local aquifer. The initiation of the Clark Land Court case is an admission by the Plaintiffs that title to a portion of the property involved in the subdivision plan is indeed in dispute.

It is apparent from the Plaintiffs' Complaint that they disagree with the merits of the City's decision. However, even assuming the Plaintiffs' claims are accurate, this case still does not rise to the level of a federal question. Creative Environments, 680 F.2d at 829 (rejecting plaintiffs § 1983 claim, even assuming that the plaintiffs could have established that the town "engaged in adversarial and even arbitrary tactics with respect to the…plan").

The Plaintiffs' Complaint amounts to a de facto appeal of the decision of the City of Westfield's Planning Board. In order to decide this case, this Court must look to the merits of the City of Westfield's decision and rule on whether the decision was warranted under city ordinances. Such an analysis will require this Court to consider the validity of the City's claim of title to a strip of land included in the Plaintiffs' development plans. This also will require the Court to consider whether the City's concerns regarding the potential effects on the aquifer and City drinking water are warranted. Such matters do not rise to the level of a federal question, and are better left to the state courts.

B. **This Court Should Refrain From Hearing This Case, Pursuant To The Doctrine of *Younger* Abstention, Because The Plaintiffs' Claims Are Currently Pending In State Court.**

Even if this Court determines that the allegations in the Plaintiffs' Complaint rise to the level of a federal question, it should refrain from hearing this case based on the doctrine of Younger abstention. The Younger decision "articulated the federal judiciary's obligation to refrain from adjudicating the merits of federal claims where to do so would needlessly inject federal courts into ongoing state criminal prosecutions." Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 637 (1st Cir. 1996), citing Younger v. Harris, 401 U.S. 37, 44 (1971). The Supreme Court has since extended this principle to include state civil and administrative proceedings. Middlesex County Ethics Committee v. Garden State Bar Assoc., 457 U.S. 423 (1982); Trainor v. Hernandez, 431 U.S. 434 (1977); Huffman v. Pusrue, Ltd., 420 U.S. 592 (1975).

Abstention is grounded in the concept of comity, "which counsels federal courts be sensitive to the existence of a parallel system of state governance." Bettencourt v. Bd. of Reg. in Medicine, 904 F.2d 772, 776 (1st Cir. 1990). Younger abstention is based on "considerations of equitable restraint, which requires that a federal court not interfere with state judicial proceedings unless there is a threat of irreparable injuries with no adequate remedy at law…." Marcal Paper Mills, 790 F.2d 195, 196 (1st Cir. 1986). Younger abstention is mandatory where its conditions are met. Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005).

"[A] federal court must abstain from reaching the merits of a case over which it has jurisdiction so long as there is (1) an ongoing state judicial proceedings, instituted prior to the federal proceeding, …that (2) implicates an important state interest, and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit." Brooks, 80 F.3d at 638. All three requirements are met in the present litigation.

First, the Plaintiffs instituted three state judicial proceedings -- one of which was dismissed and two of which are currently ongoing -- prior to bringing this case in federal court. The Golden Acres Superior Court Case, in which Plaintiffs alleged, *inter alia,* violations of the Massachusetts and United State Constitutions, has been dismissed. That decision was never appealed. The Plaintiffs' recourse in that instance is to appeal to the state appellate court. A federal district court cannot sit as an appellate court to state trial courts. There are also two lawsuits currently pending in the Land Court -- the Clark Land Court Case and the Golden Acres Land Court Case -- both of which involve the same issues presently before this Court. All of these lawsuits were filed before the Plaintiffs commenced the present federal action.

Second, it is well established that municipal regulation of land-use qualifies as an important state interest for purposes of Younger abstention. Collins v. Nuzzo, 244 F.3d 246, 251 (1st Cir. 2001); Licari v. Ferruzzi, 22 F.3d 344, 350 (1st Cir. 1994); Creative Environments, 680 F.2d at 833 n.11 (noting that abstention proper based on the "strength of the state's interest in overseeing land use issues"). See also Sederquist v. City of Tiburon, 590 F.2d 278, 281 (9th Cir. 1978); Webber v. Skoko, 432 F.Supp. 810, 813 (D. Or. 1977).

Third, the legal and factual issues currently pending before the Land Court are the same as those now presented to this Court. The Clark Land Court Case involves the disputed title to a tract of land that is included in the Plaintiffs' planned subdivision. The Land Court's decision in that matter will bear directly on the issues presented in the Complaint filed with this Court, namely the merits of the City's decision based on its claim of ownership to a portion of the property. In the Golden Acres Land Court Case the Land Court must address the merits of the City's decision to deny the subdivision application in which the Plaintiffs allege that the City of Westfield required them to "conform to an unreasonable application of its rules and regulations."

Both of the pending Land Court cases address legal and factual issues that this Court would be forced to consider in order to hear the present case. Although the Plaintiffs' Counts in the Land Court cases are not dressed as federal claims, the Land Court nonetheless must address the very same factual and legal disputes that are presently before this Court. For example, Paragraph 11 of the Golden Acres Complaint before the Land Court alleges that the "Planning Board of the City of Westfield has waived its rules and regulations under circumstances similar to Plaintiffs but refused to waive such for Plaintiffs' subdivision." Paragraph 12 claims that "the Planning Board of the City of Westfield is requiring Plaintiffs' subdivision … to conform to an unreasonable application of its rules and regulations." (Golden Acres Land Court Complaint attached as **Exhibit C(i)**).

The claims the Plaintiffs have presented to this Court will require the same factual and legal inquiries as the Land Court is currently conducting in the cases already pending there. There is the potential that, if this Court hears the Plaintiffs' claims, the decision will conflict with that of the Land Court. And, a decision in favor of the City in either Land Court case would effectively moot the Plaintiffs' claims before this Court. Avoiding this potentiality and its implications is the underlying policy behind the Younger abstention doctrine. "[T]he policy against federal interference with state judicial proceedings is premised on 'a proper respect for state functions….'" In re Justices of the Superior Court Department of the Massachusetts Trial Court, 218 F.3d 11, 16 (1st Cir. 2000), quoting Younger, 401 U.S. at 44. Such principles are especially applicable in a case such as this where no procedural irregularities are alleged and where there is no claim of discrimination based on a protected class. Land use matters are traditionally reserved to the state courts. Collins v. Nuzzo, 244 F.3d 246, 251 (1st Cir. 2001); Licari v. Ferruzzi, 22 F.3d 344, 350 (1st Cir. 1994); Creative Environments, 680 F.2d at 833 n.11.

This case presents a run-of-the mill local zoning dispute that is currently being litigated in the state court system. As such, this Court should abstain from hearing this case pursuant to the <u>Younger</u> abstention doctrine.

### IV.   Conclusion

The Defendants' Motion to Dismiss should be allowed because:  a) the Plaintiffs have improperly sought recourse in federal court for a land use dispute; and b) the ongoing state court litigations involving these same issues requires dismissal pursuant to the doctrine of <u>Younger</u> abstention.

LYNNE BOSCHER, PHILIP McEWAN, KEVIN BOWLER, ANTHONY PETRUCELLI, RANDALL RACINE, JOHN WYSOCKI, WILLIAM ONYSKI and ANDREW DENARDO Individually and as MEMBERS OF THE WESTFIELD PLANNING BOARD DURING 2003, JOHN SULLIVAN, RONALD COLE and THOMAS FLAHERTY Individually and as WESTFIELD SEWER COMMISSIONERS DURING 2002, JANA CANTUCCIO, JOSEPH SPAGNOLI and LEE PEREZ, Individually and as WESTFIELD WATER COMMISSIONERS DURING 2002, RICHARD K. SULLIVAN, Individually and as MAYOR OF THE CITY OF WESTFIELD and CHARLES MEDEIROS, BARBARA SWORDS, ADAM LIPTAK, JR., DAVID BANNISH, BRENT BEAN, BRIAN SULLIVAN, CHRISTOPHER CREAN, JAMES CASEY, MARTIN CANTY, DANIEL KNAPIK AND CHRISTOPHER KEEFE, Individually and as MEMBERS OF THE WESTFIELD CITY COUNCIL DURING 2003

By their attorneys,

/s/ Kenneth C. Pickering
Kenneth C. Pickering, BBO #634121
Jessica H. Munyon, BBO #658729
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: December 19, 2005

### CERTIFICATE OF SERVICE

I, Kenneth C. Pickering, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to William J. Pudlo, Esq. P.O. Box 676, West Springfield, MA 01090.

/s/ Kenneth C. Pickering
Kenneth C. Pickering

Dated: _December 19, 2005