UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARTHUR L. CLARK, et al.,          )
               Plaintiffs   )
                              )
                              )
      v.          )   Civil Action No. 05-30163-MAP
                              )
                              )
LYNNE BOSCHER, et al.,          )
             Defendants   )

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANTS' MOTION TO DISMISS (Document No. 3)
August 14, 2006

NEIMAN, C.M.J.

Arthur L. Clark ("Clark"), along with his wife and sons in their capacity as co-trustees of three family trusts (together "the Clarks"), brings this action against over two dozen officials of the City of Westfield (together "Defendants").[1] Joining the Clarks as plaintiffs are their neighbor, Theodore Perez ("Perez"), and a corporation they control together, Golden Acres Development Corp. ("Golden Acres") (together "Plaintiffs"). In essence, Plaintiffs allege that Defendants have conspired to interfere with their development of land located on East Mountain Road.

---

[1] Defendants include the following groups of officials: members of the 2003 Westfield Planning Board ("the Planning Board") (Lynne Boscher, Philip McEwan, Kevin Bowler, Anthony Petrucelli, Randall Racine, John Wysocki, William Onyski and Andrew Denardo); members of the 2002 Westfield Sewer Commission ("the Sewer Commission") (John Sullivan, Ronald Cole and Thomas Flaherty); members of the 2002 Westfield Water Commission ("the Water Commission") (Jana Cantuccio, Joseph Spagnoli and Lee Perez); Westfield's Mayor Richard Sullivan; and members of the 2003 Westfield City Council ("the City Council") (Charles Medeiros, Barbara Swords, Adam Liptak, David Bannish, Brent Bean, Brian Sullivan, Christopher Crean, James Casey, Martin Canty, Daniel Knapik and Christopher Keefe).

Pursuant to Fed. R. Civ. P. 12(b)(6) (and presumably Rule 12(b)(1) as well), Defendants have moved to dismiss the complaint, arguing principally that Plaintiffs' claims are ordinary land use disputes which do not give rise to federal jurisdiction. Defendants' motion has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the court will recommend that Defendants' motion be allowed.

## I. STANDARD OF REVIEW

In considering a Rule 12(b)(1) motion to dismiss, the court must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff[s] the benefit of all reasonable inferences." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). Unless the plaintiffs can prove the existence of subject matter jurisdiction, their complaint should be dismissed. *See id.* Similarly, a complaint should be dismissed pursuant to Rule 12(b)(6) "if it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir. 1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) (internal quotation marks omitted).

## II. BACKGROUND

The following allegations come directly from Plaintiffs' complaint and are stated in a light most favorable to them. To give a complete picture, however, the court has also considered related public records attached to Defendants' motion to dismiss. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (indicating that such documents may be considered on a Rule 12(b)(6));

*Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (same for Rule 12(b)(1)).

In 1997, Clark and his wife began the process of seeking to develop a residential subdivision on their East Mountain Road land. (Complaint ¶¶ 35, 36.) To effectuate their plans, Clark transferred his real estate to several family trusts. (*Id.* at ¶ 37.)

At some point in 1997, Clark, with the assistance of an engineer, prepared and submitted subdivision plans to the Planning Board. (*Id.* ¶ 38.) After a hearing, the Planning Board rejected the plans, asserting that the plans included a fifty-foot strip of land owned by Westfield itself. (*Id.* ¶ 39.) Although Clark subsequently submitted four revisions of the plans between 1997 and 2001, all were rejected by the Planning Board for a variety of reasons, including unsupported claims of title, inadequate access, and danger to the local aquifer. (*Id.* ¶ 46.) In 1998, in the midst of these developments, Clark filed a petition in Land Court to compel Westfield to try title, i.e., for Westfield to show cause why it ought not be compelled to bring any claims it has to the property. (Exhibit A-i.) Eight years later, that case is still pending.

Meanwhile, in 2001, following the Planning Board's serial rejections, Clark and his sons (as co-trustees of the family trusts) along with their neighbor, Perez, agreed to combine their contiguous lands for the purpose of developing two different subdivisions. (See *id.* ¶ 47.) Together, they formed Golden Acres and created what they thought would be an acceptable plan. (See *id.* ¶¶ 47, 48.)

In December of that year, Clark and Perez submitted a portion of their new plan, involving a subdivision entitled "Fairway Estates," to the Planning Board. (*Id.* ¶ 54.) At

around the same time, two of the family trusts submitted a separate portion of the plan for a subdivision entitled "Emerald Acres Estates." (*Id.* ¶ 55.) In February of 2002, the Planning Board rejected both portions of the plan. (*Id.* ¶ 56.) Plaintiffs' engineer soon revised the plan and Plaintiffs resubmitted it in March. (*Id.* ¶¶ 57, 58.)

In the interim, Plaintiffs' attorney sent a letter to the City Council proposing that the city's master plan include Plaintiffs' request for increased sewer and water capacity for their proposed subdivisions. (*Id.* ¶ 59.) In March of 2002, however, the City Council unanimously rejected Plaintiffs' proposal. (*Id.* ¶ 60.) Thereafter, in April of 2002, the Planning Board rejected the revised portion of the plan involving Emerald Acres Estates for various reasons, including the board's continued belief that the plan contained land owned by the city. (*Id.* ¶ 61.)

In June of 2002, Clark's engineer met with the Water Commission to seek a connection to municipal water for the subdivisions. (*Id.* ¶ 62.) One commissioner advised the engineer that the city did not intend to grant municipal water use because it "did not want the project there." (*Id.* ¶ 63.) In July of 2002, the Water Commission formally voted to deny Plaintiffs' request for municipal water use, despite Plaintiffs' claim that the subdivision would enhance the city's system by increasing pressure and flow for the entire area. (*Id.* ¶¶ 66, 67.) Plaintiffs understood that their request was denied, in part, because they failed to first obtain permission of the Sewer Commission to connect to the municipal sewer lines. (See *id.* ¶ 68.)

In fact, Plaintiffs had sought permission to connect to the municipal sewer lines, but the Sewer Commission had advised them that their request would be approved only

if they first obtained permission to connect to municipal water. (*Id.* ¶¶ 70, 72.) The Sewer Commission further advised Plaintiffs that it was concerned with the capacity of the system and the number of lots proposed. (*Id.* ¶ 73.) Sometime later in 2002, the Sewer Commission denied Plaintiffs' request. (*Id.* ¶ 75.)

On September 6, 2002, Plaintiffs filed suit in Superior Court against the Water Commission. (Exhibit B-i.) In November of 2005, however, the court dismissed Plaintiffs' complaint for lack of jurisdiction. (Exhibit B-v.)

In the interim, in October of 2002, Plaintiffs submitted to the Planning Board yet another version of the subdivision plan, this one including on-site well water, on-site septic systems, and fewer lots. (Complaint ¶ 78.) The Planning Board then solicited comments from all interested municipal boards and commissions. (*Id.* ¶ 80.) In response, the Water Commission advised the Planning Board that the modified plan posed a threat to the quality of municipal drinking water and also indicated concern over the crossing of a dam by a proposed primary access route. (*Id.* ¶¶ 81, 82.) For his part, the city's health director advised the Planning Board that the underlying aquifer might be disrupted by a large number of wells and septic systems and, therefore, should consider allowing municipal sewer and water. (*Id.* ¶ 83.)

In December of 2002, the Planning Board conducted a public hearing on Plaintiffs' proposed plan and, one month later, voted to deny Plaintiffs' proposal because the plan required on-site wells that might damage the aquifer. (*Id.* ¶¶ 84, 85, 87.) In response, on January 24, 2003, Plaintiffs brought suit against both the Planning Board and the Water Commission in Land Court. (Exhibit C.) That summer, the Land

5

Court found that it lacked jurisdiction over the Water Commission and, therefore, dismissed that portion of Plaintiffs' complaint. (Exhibit C-v.) It appears, however, that the remainder of that case remains open.

On July 8, 2005, Plaintiffs filed the instant action. Plaintiffs' complaint contains three counts: a constitutionally-based due process claim (Count I); a violation of 42 U.S.C. § 1983 ("section 1983") (Count II); and civil conspiracy (Count III). In due course, Defendants filed the instant motion to dismiss and Plaintiffs tendered their opposition.

### III. DISCUSSION

Defendants' principal argument is that Plaintiffs' claims are ordinary land use disputes which do not give rise to federal jurisdiction. The court agrees. In reaching this conclusion, the court has looked first to Plaintiffs' constitutional claims, i.e., their due process cause of action (Count I) and the alleged violation of section 1983 (Count II).

As to Count I, it should be noted that, although Plaintiff's complaint never uses the term "due process," it can only be read as alleging a violation of procedural and/or substantive due process, Plaintiffs having cited the proper due process clauses. Granted, Plaintiffs also use language in Count I which echoes 42 U.S.C. § 1981(a) -- *i.e.,* that they have been denied "equal rights to make and enforce contracts and to other wise [sic] enjoy the full and equal benefit and protection of the laws" (Complaint ¶ 105) -- but that antebellum statute is obviously inapplicable here insofar as there is no argument that Plaintiffs have been denied contract rights "enjoyed by white citizens."

As to Count II, Plaintiffs are no doubt aware that section 1983 does not create substantive rights; it simply provides a vehicle by which individuals may bring claims for violations of rights, including due process rights, secured by the Constitution.  See *Matney v. City of N. Adams*, 359 F. Supp. 2d 20, 22 (D. Mass.  2005).

Unfortunately for Plaintiffs' cause, the First Circuit has repeatedly held, as District Judge Michael A. Ponsor recently recognized, "that land usage controversies between a plaintiff and a state or local administrative and political entities do not rise to the level of due process violations, absent evidence of 'fundamental procedural irregularity, racial animus, or the like.'"  *Matney*, 359 F. Supp. 2d at 23 (quoting *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 831 (1st Cir. 1982)).  "Indeed," Judge Ponsor continued, "even a 'bad faith refusal to follow state law in such local administrative matters does not amount  to a deprivation of due process rights where the state courts are available to correct the error.'"  *Id.* (quoting *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir. 1983)).

Here, as in *Matney*, even assuming that Defendants' actions "somehow amounted to an abuse of power . . . or violated some state regulation, ordinance or statute, there is no basis to find that these actions rose to the level of due process violations."  *Id*.  Moreover, "no allegation is offered of race-based or other discriminatory animus."  *Id.*  Further, and perhaps most importantly, despite Plaintiffs' warranted frustration with the perceived "run-around" and contradictory advice they have received from various city boards and agencies, "no allegation of any fundamental procedural irregularity is offered."  *Id*.  On the contrary, Plaintiffs concede that they

have proceeded against Defendants administratively, that they have sued Defendants in at least two competent state tribunals, the Land Court and the Superior Court, and that two Land Court cases remain open. *See id.* (declining jurisdiction over land use dispute that was the subject of a Land Court action pending on appeal).

The fact that Plaintiffs' remaining claim (Count III) is for civil conspiracy does not change the court's analysis. For one thing, this claim appears to be little more than a recast of Plaintiffs' constitutional claims. Moreover, the First Circuit has repeatedly stated that mere allegations of conspiracy do not give rise to federal land use claims especially where a plaintiff has a remedy in a state tribunal. *See Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir. 1985) (rejecting conspiracy claims in land use dispute despite board's repeated denial of permits and statement that plaintiff "would never be given a . . . permit"); *Estabrook*, 680 F.2d 822 at 83 (holding conspiracy allegations in land use dispute did not amount to constitutional violations where, *inter alia*, the town was motivated by parochial interests).

At bottom, the court takes heed of Judge Ponsor's observation in *Matney* that "if federal judges were to thrust themselves into these kinds of disputes, then every zoning decision and every dispute about the application of a local ordinance would be tried in federal court." *Id.*, 359 F. Supp. 2d at 23. *See also Raskiewicz*, 754 F.2d at 44 ("[T]his court has repeatedly said that federal courts do not sit as a super zoning board or a zoning board of appeals . . . [and] we feel confident that where, as here, the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. §

8

1983.") (citations omitted). With such concerns for the principles of comity and federalism in mind, the court will recommend that Defendants' motion to dismiss be allowed.[2]

### IV. CONCLUSION

For the reasons stated the court recommends that Defendants' motion to dismiss be ALLOWED.[3]

DATED: August 14, 2006

       /s/ Kenneth P. Neiman
       KENNETH P. NEIMAN
       Chief Magistrate Judge

---

[2] The court reaches this conclusion without considering Defendants' alternative, and equally compelling, federalism argument, *i.e.*, that under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny this federal court should abstain from adjudicating the merits of Plaintiffs' claims where to do so would needlessly inject the court into the ongoing state Land Court proceedings. *See generally Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *Trainor v. Hernandez*, 431 U.S. 434 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975).

[3] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.