# United States Court of Appeals
## For the First Circuit

No. 06-2473

ARTHUR L. CLARK, individually; RITA M. CLARK, individually; RAYMOND A. CLARK, Trustee of the E. Mt. Rd. Nominee Trust, and as Trustee of the Arthur L. Clark Family Trust and as Trustee of the Clark Sons Realty Trust; RICHARD J. CLARK, Trustee of the E. Mt. Rd. Nominee Trust, and as Trustee of the Arthur L. Clark Family Trust and as Trustee of the Clark Sons Realty Trust; JAMES F. CLARK, Trustee of the E. Mt. Rd. Nominee Trust, and as Trustee of the Arthur L. Clark Family Trust and as Trustee of the Clark Sons Realty Trust; ARTHUR J. CLARK, Trustee of the E. Mt. Rd. Nominee Trust, and as Trustee of the Arthur L. Clark Family Trust and as Trustee of the Clark Sons Realty Trust; THEODORE PÉREZ, individually; GOLDEN ACRES DEVELOPMENT CORP.,

Plaintiffs, Appellants,

v.

LYNNE BOSCHER, PHILIP McEWAN, KEVIN BOWLER, ANTHONY PETRUCELLI, RANDALL RACINE, JOHN WYSOCKI, WILLIAM ONYSKI and ANDREW DENARDO, individually and as Members of the Westfield Planning Board During 2003; JOHN SULLIVAN, RONALD COLE and THOMAS FLAHERTY, individually and as Westfield Sewer Commissioners During 2002; JANA CANTUCCIO, JOSEPH SPAGNOLI and LEE PÉREZ, individually and as Westfield Water Commissioners During 2002; RICHARD K. SULLIVAN, individually ans as Mayor of the City of Westfield; and CHARLES MEDEIROS, BARBARA SWORDS, ADAM LIPTAK, JR., DAVID BANNISH, BRENT BEAN, BRIAN SULLIVAN, CHRISTOPHER CREAN, JAMES CASEY, MARTIN CANTY, DANIEL KNAPIK, and CHRISTOPHER KEEFE, individually and as Members of the Westfield City Council During 2003,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Boudin, <u>Chief Judge</u>,
Torruella and Dyk,[*] <u>Circuit Judges</u>.

<u>William J. Pudlo</u>, for appellants.
<u>Kenneth C. Pickering</u>, with whom <u>Jessica H. Munyon</u> and <u>Mirick, O'Connell, DeMallie & Lougee, LLP</u>, were on brief, for appellees.

January 31, 2008

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** Appellants Arthur L. and Rita M. Clark, the trustees of the several Clark family trusts, Theodore Pérez, and Golden Acres Development Corporation (collectively, "Appellants") brought suit against the former mayor of the City of Westfield and various former city council members and commissioners (collectively, "Westfield") for obstructing the development of a residential subdivision on their land. Appellants asserted constitutional substantive due process and equal protection claims and sought monetary damages under 42 U.S.C. § 1983. The District Court for the District of Massachusetts, on recommendation from the magistrate judge, dismissed Appellants' suit under Fed. R. Civ. P. 12(b)(6) for failing to state claims upon which relief could be granted. Appellants now appeal. For the reasons set forth below, we affirm the district court's dismissal.

## I. BACKGROUND

Arthur L. and Rita M. Clark acquired several parcels of land in Westfield, Massachusetts, which they sought to develop as a residential subdivision. In furtherance of this plan, they transferred portions of their real estate holdings to various family trusts (collectively, "the Clarks") and hired an engineering firm to prepare the necessary subdivision plans.

The Clarks' first subdivision plan was submitted to the City of Westfield's Planning Board in 1997. Following a hearing,

the Planning Board rejected the plan because it included a fifty-foot strip of land surrounding Chapin Pond that was allegedly owned by the city. The Clarks unsuccessfully revised and resubmitted the plan four times between 1997 and 2001.[1] In 1998 the Clarks also filed a petition in the Massachusetts Land Court to compel the city to try title to Chapin Pond. Nine years later on March 2, 2007, the Land Court found the City of Westfield to be the record title holder of Chapin Pond.[2]

In 2001, the Clarks entered into an agreement with their neighbor and Co-Appellant Theodore Pérez to combine their contiguous lands and develop them into residential subdivisions. Together they created the Golden Acres Development Corporation and in December 2001 submitted plans for two proposed subdivisions to the Westfield Planning Board.[3] The Planning Board summarily rejected both these proposals in February 2002.

These same two plans were revised and resubmitted one month later. Concurrently, the Clarks' attorney sent a letter to the Westfield City Council requesting that the city's master plan take into account the increased water and sewage capacity required

---

[1] The Planning Board rejected all of these submissions for various reasons, including inadequate access, danger to the local aquifer, and the city's claim of title over Chapin Pond.

[2] An adverse possession claim put forth by the Clarks as a part of this same action is still pending.

[3] These were the Fairway Club Estates and Emerald Acres Estates subdivision projects.

by the Clarks' proposed subdivisions. The request was unanimously rejected by the City Council and in April 2002, the Planning Board also rejected at least one of Appellants' revised subdivision plans because it included property over which the city claimed ownership.

In June 2002, the Clarks' engineer met with the Westfield Water Commission to connect the proposed subdivisions to the municipal water supply. At that meeting the engineer was advised that the commissioners did not intend to grant Appellants municipal water service because "the City did not want the project there." Despite the finding by a Water Department contractor that the loop created by the proposed subdivisions would benefit the entire city with increased water pressure and flow, the Water Commission voted to formally deny the Clarks' request on July 12, 2002. On September 6, 2002, Appellants filed suit against the Water Commission in Massachusetts Superior Court. The suit was dismissed for lack of jurisdiction.

Appellants assert that they were denied municipal water service because they failed to first secure a connection to the municipal sewer line. While the request before the Water Commission was pending, however, the Clarks' engineer also petitioned the Westfield Sewer Commission for service, and was turned down because Appellants had not yet been connected to the municipal water line. The Sewer Commission was also concerned about the sewer system's capacity and the Appellants' proposed

number of lots, and it indicated that any excess capacity that existed in the sewer system would be allocated to other developers who had previously requested service.

In October 2002, Appellants submitted their final subdivision plan to the Westfield Planning Board. Due to the denial of municipal water and sewage service, this plan proposed fewer lots and relied on the use of on-site water and waste disposal systems. This time the Planning Board solicited comments from all interested municipal boards and commissions, and the Water Commission responded by expressing its concern that the proposed subdivision would threaten the municipal water supply and that its primary access route crossed over a dam. The city's health director also worried about the impact that the onsite septic systems would have on the underlying aquifer, and recommended that the city consider granting access to the municipal sewer and water lines. After a public hearing, the Planning Board voted to deny the modified plan on January 3, 2003.

On January 24, 2003, Appellants responded by filing a complaint against the Planning Board and the Water Commission in Massachusetts Land Court. The Land Court eventually dismissed all claims against the Water Commission for lack of jurisdiction.[4] In

---

[4] As of the filing of this appeal the charges against the Planning Board were ongoing.

April 2003, Appellants also filed a new request with the Westfield Sewer Commission to gain access to the municipal sewer line.[5]

On October 7, 2003, the City of Westfield exercised its eminent domain power to occupy thirty-eight acres of Pérez's property for the purpose of water supply protection. Appellants allege that such taking rendered their development plans unfeasible, as the proposed subdivision's access to the municipal roadway was planned through the Pérez land.

Appellants filed the instant suit in district court on July 8, 2005, asserting violations of the due process and equal protection guarantees of the Fourteenth Amendment, and requesting damages under 42 U.S.C. § 1983.[6] They alleged that Westfield conspired to interfere with the residential development of their lands. Westfield moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) and the district court referred the matter to a magistrate judge.

On August 14, 2006, the magistrate judge issued a report and recommendation that Appellants' claims be dismissed because "land usage controversies between a plaintiff and state or local administrative and political entities do not rise to the level of due process violations, absent evidence of 'fundamental procedural

---

[5] At the time of filing of this appeal, the Commission had taken no action on the Appellants' request.

[6] Appellants also asserted state equal protection and civil conspiracy charges, which were dismissed and are not appealed.

irregularity, racial animus, or the like,'" which Appellants did not allege or produce. Report and Recommendation With Regard to Defendants' Motion to Dismiss at 7, Clark v. Boscher, No. 05-30163-MAP (D. Mass. August 14, 2006)(quoting Matney v. City of N. Adams, 359 F. Supp. 2d 20, 23 (D. Mass. 2005) (internal quotations omitted)). The magistrate judge also recommended dismissal for the equal protection claim. Having failed to raise a colorable constitutional or federal statutory cause of action, Appellants were not entitled to recovery under § 1983. The district court adopted the magistrate judge's report and recommendation in its entirety and dismissed Appellants' claims.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of a Rule 12(b)(6) motion to dismiss de novo. Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992). In doing so, we accept as true all of Appellants' well-pleaded facts "indulging all reasonable inferences therefrom." Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 51 (1st Cir. 2006). Nonetheless, we reject "'unsupported conclusions or interpretations of law.'" Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001) (quoting Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)). To survive Rule 12(b)(6) dismissal, Appellants' well-pleaded facts must "possess enough heft to 'sho[w] that [Appellants are] entitled

to relief.'" Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1959 (2007).

### B. Recovery under 42 U.S.C. § 1983

42 U.S.C. § 1983 does not endow plaintiffs with any substantive rights independent of those already granted under federal law. Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000). To recover under § 1983, a plaintiff must prove that a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States was carried out by persons acting under color of state law. 42 U.S.C. § 1983 (2000); Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997). Our first line of inquiry then is to determine whether Appellants' well-pleaded facts demonstrate violations of their constitutional due process and equal protection rights under the Fourteenth Amendment.

#### 1. Substantive Due Process

Appellants contend that their averred facts state a valid substantive due process claim entitling them to relief under § 1983 because "the actions of all City officials amount to an [sic] pattern of arbitrary, unreasonable and capricious acts which deprive the Plaintiffs of their right to reasonably and legally use their property." We disagree.

Substantive due process is a constitutional cause of action that leaves the door "slightly ajar for federal relief in

truly horrendous situations." Néstor Colón-Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992). In order to assert a valid substantive due process claim, Appellants have to prove that they suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience. Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006); Rivera v. Rhode Island, 402 F.3d 27, 33-34 (1st Cir. 2005). In the instant case, whether Appellants have a recognized property interest in developing their land is ultimately immaterial because they have failed to prove that Westfield engaged in behavior that shocks the conscience. See, e.g., Mongeau v. City of Marlborough, 492 F.3d 14, 17 (1st Cir. 2007) (stating that in order to assert a valid substantive due process claim, plaintiff who was involved in a land-use dispute was required to prove that the defendant city government's actions shocked the conscience).

We have repeatedly held that "'the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong.'" Id. (quoting Pagán, 448 F.3d at 33); see also PFZ Properties, Inc. v. Rodríguez, 928 F.2d 28, 31 (1st Cir. 1991)("[R]ejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due

process."); Custodio, 964 F.2d at 45 ("[T]he due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief.").

Consequently, a run-of-the-mill land-use case such as this one does not rise to the level of behavior that shocks the conscience. Here, Appellants do not allege any "fundamental procedural irregularity, racial animus, or the like." See Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982). Nor do they contend that a fundamental principle has been violated. See Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990). Appellants merely complain that they were denied the necessary permits to develop residential subdivisions on the Clark and Pérez land, and that the City of Westfield denied such permits in furtherance of its own interests.

Indeed, the regulatory actions Appellants complain of are virtually indistinguishable from others we have declined to find actionable in the past. See, e.g., Creative Environments, 680 F.2d at 826, 833-34 (holding that city planning board's denial of the permits required to develop a residential subdivision, allegedly premised on criteria that were arbitrary and capricious and exceeded the planning board's discretion, did not constitute behavior that shocked the conscience); SFW Arecibo, 415 F.3d at

140-41 (holding that state planning board's revocation of building permits, allegedly without jurisdiction and thereby usurping the jurisdiction of a state permitting agency, did not constitute conduct that shocked the conscience); Licari v. Ferruzzi, 22 F.3d 344, 349-50 (1st Cir. 1994) (holding that city planning board's revocation of building permits, delay in granting new permits, and unauthorized enforcement actions allegedly motivated by hostility towards developer did not amount to conduct that shocked the conscience). Given that Appellants' well-pleaded facts have not met the Mongeau "shocks the consciousness" standard, Appellants have failed to establish a plausible violation of their constitutional right to substantive due process.

### 2. Equal Protection[7]

Appellants contend that they "were treated differently from others similarly situated" with regard to Westfield's refusal to connect their proposed subdivisions to the municipal water and sewer lines. In support of this contention, Appellants identify three development projects that, unlike Appellants', were granted municipal water and sewer service in April 2004 and May 2005. A plausible equal protection violation is established when a plaintiff shows by his or her well-pleaded facts that she was

---

[7] Though Appellants mistakenly label this a due process claim in their brief, the nature of their arguments and the allegations in their complaint make clear that they are advancing an equal protection claim.

treated differently from "others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 57 (1st Cir. 2006) (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)). Even granting Appellants every reasonable inference, their well-pleaded facts fail to meet this standard.[8]

    Two persons or entities are similarly situated if "a prudent person, looking objectively at the incidents [complained of], would think them roughly equivalent and the protagonists similarly situated . . . 'in all relevant respects.'" Barrington Cove, 246 F.3d at 8 (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989)). Applying the Barrington Cove test, this Court must be able to compare apples to apples. See id. Appellants in this case, however, have presented us with a fruit basket. The three development projects identified by Appellants as having been granted access to Westfield's water and sewer lines

---

[8] In his report and recommendation, the magistrate judge inexplicably treated Appellants' equal protection charge as a 42 U.S.C. § 1981(a) claim and recommended dismissal, "as there is no argument that plaintiffs have been denied contract rights 'enjoyed by white citizens.'" We find this analysis perplexing given that Appellants' assertion of disparate treatment is not related to their ability to enter or enforce contracts, nor is it related to their race.

are: a private subdivision in the Munger Hill neighborhood, a 250-unit affordable housing community, and an industrial park. All of them were granted access in or after April 2004, almost two years after the final time such access was denied to Appellants. By their very nature, the affordable housing community and the industrial park differ significantly from Appellants' proposed subdivisions, and it is therefore expected that different policy grounds influenced Westfield's decision to grant municipal services. The Munger Hill subdivision, though of the same type as Appellants' proposed development, is located on a parcel of land different from Appellants'. As such, Westfield's concern regarding the possible contamination of the aquifer underlying Appellants' tract does not come into play. Neither does the still-pending property dispute regarding Chapin Pond. Consequently, the three identified development projects are not similarly situated vis-à-vis Appellants' proposed subdivisions, and Appellants' well-pleaded facts have failed to state a plausible violation of the equal protection clause. We need not reach the question of whether an equal protection claim would be established in this case if differential treatment had been shown. See Buchanan v. Maine, 469 F.3d 158, 178 ("[A] plaintiff not relying on 'typical' impermissible categories, such as race or religion, must show that he was intentionally treated differently from others similarly

situated, . . . and that the different treatment was based on a malicious or bad faith intent to injure.").

As Appellants' well-pleaded facts have not established a plausible entitlement to relief under the Fourteenth Amendment, their § 1983 claim does not survive Rule 12(b)(6) review, and was properly dismissed.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**Affirmed**.